# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELMER TANKERSLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. CIV-05-506-KEW |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner, Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Claimant, Elmer Tankersley, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Court AFFIRMS the Commissioner's decision.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment..." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his "physical or mental impairment or impairments are of such severity that he is not only

unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy..." Id. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term substantial evidence has been interpreted by the U.S. Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not reweigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also Casias, 933 F.2d at 800-01.

---

[1]Step one requires claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. See id. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

### Claimant Background

Claimant was born on September 18, 1959, and was 45 years old at the time of the hearing. He has a ninth grade education. Claimant previously worked as a construction worker, furniture assembler, town marshal, dump truck driver, house parent, and office manager. Claimant alleges an onset date for disability on July 29, 2003 due to degenerative disc disease and headaches.

### Procedural Background

On December 30, 2003, Claimant filed for disability benefits under Title II (42 U.S.C. § 401, et seq.). On February 20, 2004, Claimant filed for supplemental security disability benefits under Title XVI (42 U.S.C. § 1381, et seq.). Claimant's applications for benefits were denied in their entirety initially and on reconsideration. ALJ James D. Jordan conducted a hearing on Claimant's application on April 6, 2005 in Sallisaw, Oklahoma. By decision dated May 20, 2005, the ALJ found that Claimant was not disabled at any time through the date of the decision. On November 4, 2005, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined Claimant retained the residual functional capacity (RFC) to perform work that exists in significant numbers in the national and regional economies.

## Review

Claimant asserts that the Commissioner, through the ALJ and the Appeals Council, erred in (1) failing to find a severe impairment resulting from headaches; (2) failing to perform a proper credibility determination; and (3) failing to consider opinions from treating physicians in his RFC assessment; and (4) failing to include all physical limitations in hypothetical questions submitted to the Vocational Expert (VE).

## Headaches

Step two of the sequential analysis requires a determination of whether a claimant's alleged impairment(s) are "severe." 20 C.F.R. § 404.1520(a),(4)(ii), (c); 416.920(a)(4)(ii),(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." Id. 404.1521(a); 416.921(a). Only "slight" impairments, imposing only a "minimal effect on an individual's ability to work are considered not severe";

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled " is made [at step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even the individual's age, education, or work experience were specifically considered.

Soc. Sec. R. 85-88.

In light of these definitions, case law requires a very limited role for step two analysis. Step two is designed to eliminate from consideration at the early stages of the administrative process those individuals who could not possibly meet the statutory definition of disability.

Bowen. Yuckert, 482 U.S. 137, 156 (1987). While "the mere presence of a condition or ailment" is insufficient to move past step two, a claimant is required only to make a "de minimus" showing of impairment to proceed on to the further steps in the analysis. Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

Here, Claimant relies on the medical report from Dr. John L. Kareus to support his contention that headaches constitute a severe physical impairment. Dr. Kareus' records show Claimant presented from treatment on October 9, 2002 with complaints of persistent headaches beginning one and one-half months before the consultation. Claimant was diagnosed with a chronic headache which did not meet the criteria for chronic daily headaches as they had not been present long enough. (Tr. 112-114)

The ALJ determined Claimant failed to establish that he had a severe impairment from headaches. He noted Claimant's evaluation for complaints of headaches with Dr. Kareus but found that no medically determinable impairment was established from this visit. Further, CT scan testing showed normal results. (Tr. 19)

In this case, Claimant has failed to establish that he has a severe physical impairment resulting from headaches. The ALJ's determination is supported by substantial evidence.

## Credibility Analysis

Claimant also asserts the ALJ inappropriately discounted his credibility in light of evidence contained in the record. Here, the ALJ discussed medical evidence in which Claimant made subjective complaints of pain and the conclusions from treating physicians regarding the physical capacity to engage in activities of daily living. The ALJ noted Claimant's testimony in which he listed physical activities in which he regularly engages and the consistency of that testimony with the medical opinion expressed by Dr. Dotson, who provided for sedentary

standing and walking limitations with an allowance for alternating positions during the workday. Claimant's statement that he was unable to lift more than a glass of water was found to be less than credible in light of inconsistencies with previous testimony that he could handle laundry and with prior written statements in which he claimed the ability to lift up to 30 pounds. (Tr.22).

It is well-established that "findings linked to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

This court finds the ALJ affirmatively linked his conclusion to medical evidence in the record. Further, his conclusions are supported by substantial evidence.

## Treating Physician Opinions

Next, Claimant argues the ALJ erred by improperly rejecting the opinions from the treating physicians which required the inclusion of additional limitations in the RFC assessment. Specifically, Claimant contends the opinions from Dr. J. Michael Standefer and Dr. Richard Dotson require an inclusion within the RFC evaluation for specific intervals at which Claimant could change positions.

On April 4, 2005, Dr. Dotson prepared a medical source statement of the ability to do work-related activities. He opined Claimant had exertional limitations that allowed occasional lifting an/or carrying less than 10 pounds. Claimant was able to stand less than two hours in an eight-hour workday with the need for a medical required hand-held assistive device necessary for ambulation. He must periodically alternate sitting and standing to relieve pain or discomfort. Pushing and pulling was limited in the lower extremities. (Tr. 189-190).

A Physical Residual Functional Capacity Evaluation was completed by Dr. J. Michael Standefer on June 24, 2004. Dr. Standefer opined Claimant could sit, stand, and walk for one, two, and three hours in an eight-hour workday at one time. Claimant could sit, stand, and walk for a total of one, two, three, and four hours in an entire work-day. He could occasionally lift up to 21-25 pounds and could rarely lift up to 26-50 pounds. Claimant could occasionally carry 21-25 pounds and rarely lift 26-50 pounds. He could occasionally squat, crawl, climb, reach, and crouch. Claimant could only rarely bend and stoop. He had moderate limitations on the exposure to marked changes in temperature and humidity as well as vibrations. Mild limitations were also noted in marked changes in temperature and humidity and vibrations. (Tr. 186-188). Subsequently, Dr. Standefer submitted a supplemental report clarifying his findings on Claimant's ability to sit, stand, and walk. He stated that he intended to show that Claimant could sit, stand, or walk to varying degrees on certain days. On some days, Claimant would be able to sit, stand, or walk either one, two, or three hours depending on the day and the activity. (Tr. 192).

The ALJ included a discussion of the opinions from both Dr. Dotson and Dr. Standefer in his opinion. The ALJ interpreted Dr. Standefer's report to include a broad range of functioning depending on the particular day. He found that the report from Dr. Standefer conflicted in many areas with the report of the other treating physician, Dr. Dotson. After considering both opinions, as well as the extensiveness of the treatment relationship with each physician, the ALJ concluded that the report from Dr. Dotson provided a clearer assessment with respect to Claimant's physical capacity. Thus, the opinion from Dr. Dotson received greater weight than the opinion from Dr. Standefer. (Tr. 21)

The ALJ determined Claimant retained the RFC to perform less than a full range of

sedentary work. He was limited to lifting no more than 10 pounds; he was able to stand and/or walk for less than two hours during an eight-hour workday; he required the use of a cane, as well as the ability to alternate between standing and sitting; he was limited with respect to the use of his lower extremities for pushing or pulling; he was never able to climb, kneel, crouch, or crawl; he was able to balance occasionally, and he was limited with respect to temperature extremes, vibration, humidity, and wetness, as well a hazards, such as machinery or heights. (Tr. 22).

This Court finds the ALJ's determination that the medical report of Dr. Standefer was entitled to less than controlling weight while the report from Dr. Dotson was given controlling weight is supported by substantial evidence. Further, the ALJ's inclusion of a limitation requiring the ability to alternate positions in his RFC determination was consistent with the medical opinions from both physicians. Therefore, the ALJ did not err in his RFC assessment.

**Vocational Testimony**

Claimant's final allegation of error asserts that hypothetical questions submitted to the VE were improper because they failed to specify the intervals at which Claimant would be required to change positions while working.

Here, the ALJ posed questions to the VE that assumed the hypothetical individual could sit one hour at a time, other days two hours at a time, other days three hours at a time. He could stand one, two, or three hours, depending on the day. He could walk one, two, or three hours, depending on the day. Additionally, the individual would be able to lift up to 25 pounds and occasionally carry up to 25 pounds. He could occasionally bend, squat, crawl, climb, reach, and crawl. He has a restriction on activities, to a moderate or mild degree, involving exposure to marked changes in temperature and humidity. (Tr. 238-239).

Subsequent questions posed by the ALJ added more restrictions that limited occasional

lifting and carrying to less than ten pounds and standing or walking less than two hours in an eight-hour workday. He would be required to use a hand held device for ambulation. He would require periodic alternating between sitting and standing. He would be limited in pushing and pulling in the lower extremities and precluded from climbing, kneeling, crouching, or crawling. He could occasional balance but must avoid temperature extremes, vibration, humidity, wetness, and hazards, such as unprotected heights and dangerous machinery. (Tr. 240).

In response to these restrictions included in the hypothetical questions, the VE testified that the individual would retain the ability to perform the job functions of an order clerk, in food and beverage or he would be able to work as a surveillance system monitor. Moreover, both job categories existed in the regional and national economies. (Tr. 240-241).

At step five of the sequential analysis, the ALJ bears the burden to show that there are jobs in the regional and national economies that a claimant can perform with the limitations the ALJ has found to exist. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citing, inter alia, 42 U.S.C. § 423(d)(2)(A)). The burden does not rest with the claimant to produce or develop vocational evidence at step five. Id. at 1491. In a case such as this one, the ALJ "must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual lives or in several regions of the country." Soc. Sec. R. 96-9p, 1996 WL 374185 at 5. However, any hypothetical questions submitted to the VE must reflect with precision all of a claimant's mental and physical limitations to constitute substantial evidence a denial of benefits. An ALJ's hypothetical questioning of a VE will provide an appropriate basis for a denial of benefits where the questions include all of limitations ultimately included in the ALJ's RFC assessment. Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000).

As previously discussed in this opinion, the ALJ did not err in his RFC assessment. Further, this court finds the ALJ's hypothetical questioning of the VE accurately reflected the Claimant's physical limitations. The ALJ's denial of benefits is supported by substantial evidence.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied, therefore the ruling of the Commissioner of Social Security Administration is AFFIRMED.

DATED this 16th day of October, 2006.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE